IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Robert W. Harrell, on behalf of and in his official capacity as Speaker of the South Carolina House of Representatives
1100 Gervais Street
Columbia, SC 29201-6215

Plaintiff,

vs.

The United States of America
U.S. Attorney For the District of Columbia
Civil Division
4th Floor
501 Third Street, N.W.
Washington, D.C. 20530

Eric H. Holder, Jr., in his official capacity as Attorney General of the United States
Office of General Counsel
Justice Management Division
Department of Justice
145 N Street, N.E.
Washington, D.C. 20530

Defendants.

Civil Action No.:

**COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO THE PROVISIONS OF SECTION 5 OF THE VOTING RIGHTS ACT OF 1965, AS AMENDED, 42 U.S.C. § 1973C, AND REQUEST FOR THREE-JUDGE COURT**

Plaintiff Robert W. Harrell, in his official capacity as Speaker of the South Carolina House of Representatives and on behalf of the South Carolina House of Representatives, brings this action for declaratory judgment pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, (hereinafter "Section 5"), and 28 U.S.C. § 2201, *et seq.* The Plaintiff respectfully would show the Court the following:

1. This action is filed for the purpose of obtaining a declaratory judgment, as required by Section 5, which permits Plaintiff to enforce and implement H. 3991, a bill signed into law by the Governor of South Carolina on June 28, 2011. H.R. 3991 creates new legislative duties and affects the nomination and election of members of the South Carolina General Assembly through a redistricting process that is based on the 2010 Census results.

**Parties**

2. Plaintiff Robert W. Harrell, in his official capacity as Speaker of the South Carolina House of Representatives and on behalf of the South Carolina House of Representatives, brings this action for declaratory judgment pursuant to Section 5 and 28 U.S.C. § 2201, *et seq*.

3. Plaintiff Robert W. Harrell is the person expressly authorized and directed by South Carolina law to seek approval of H. 3991 in accordance with Section 5.

4. The United State is a proper defendant in this action because "[a] State or political subdivision [covered by Section 5] wishing to make use of a recent amendment to its voting laws … has a concrete and immediate 'controversy' with the Federal Government." *South Carolina v. Katzenbach*, 383 U.S. 301, 335 (1966).

5. Eric H. Holder, Jr. is a proper defendant in this action because he is the Attorney General of the United States and is principally responsible for enforcing the Voting Rights Act of 1965, including the defense of Section 5 litigation in the United States District Court for the District of Columbia. 42 U.S.C § 1973(a).

**Jurisdiction and Venue**

6. This action is brought pursuant to Section 5, under which this Court is authorized to issue the declaratory judgment Plaintiff seeks. 42 U.S.C. § 1973(b). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

7. Venue is proper in this Court pursuant to Section 5 and 28 U.S.C. § 2284.

**Three-Judge Panel Required and Requested**

8. Because the State of South Carolina is a covered jurisdiction under the Voting Rights Act of 1965, *see* 28 C.F.R. Pt. 51, App., changes to the districts from which members of the House of Representatives are elected are subject to Section 5. Section 5 provides that no voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 may be enforced unless and until the State (a) obtains a declaratory judgment from this Court that the qualification, prerequisite, standard, or procedure has neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in 42 U.S.C. §1973b(2); or (b) submits the qualification, prerequisite, standard, or procedure to the Attorney General for administrative review and preclearance and an objection is not interposed to the State's enforcement of the qualification, prerequisite, standard, or procedure.

9. Section 5 and 28 U.S.C. § 2284 require that an action seeking a declaratory judgment with respect to Section 5 must be heard and determined by a court of three judges, which shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."

10. Simultaneously with the filing of this Complaint, Plaintiff is seeking administrative Section 5 preclearance. Substantial factual information regarding the voting changes at issue has been presented to the Defendants in connection with the administrative Section 5 submission.

## Factual Allegations

11. The South Carolina General Assembly is composed of two bodies: the Senate, which has 46 single-member seats, and the House of Representatives, which has 124 single-member district seats. S.C. Const. art. III, §§ 1, 3, 6.

12. The members of the South Carolina House of Representatives are elected to two-year terms during every even-numbered year during the same general election. *Id.* § 2.

13. Consistent with the requirements of the Federal Constitution, the South Carolina Constitution requires that state governing officials enact new district plans for the House and Senate on an equipopulous basis every ten years. *See Reynolds v. Sims*, 377 U.S. 533, 568 (1964) (holding that "as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis"); SC Const. art. III, § 3. The General Assembly may adopt the decennial census "as a true and correct enumeration of the inhabitants of the several Counties, and make the apportionment of Representatives among the several Counties, according to said enumeration." SC Const. art. III, § 3. Finally, "[i]n assigning Representatives to the several Counties, the General Assembly shall allow one Representative to every one hundred and twenty-fourth part of the whole number of inhabitants in the State." S.C. Const. art. III, § 4.

14. The General Assembly enacted a plan that ultimately garnered strong bipartisan support in both houses of the General Assembly. Following lengthy debates and the adoption of numerous amendments, the House passed H. 3911 by a vote of 92-24 on a second reading, and 82-23 on a third reading. The Senate then passed H. 3911 by a vote of 37-5 on second reading – no tally of votes was recorded for third reading in the Senate – and then returned the bill to the House with an amendment. The House further amended H. 3911 and returned it to the Senate

with amendments. The Senate concurred with the House amendment by a vote of 35-1 and enrolled the bill on June 22, 2011.

15. H. 3991 was ratified on June 22, 2011, and was signed into law by Governor Nikki Randhawa Haley on June 28, 2011. Thus, the bill is now ready for preclearance. However, no part of H. 3991 can be implemented by Plaintiff until this Court enters a declaratory judgment as requested by Plaintiff or until the Attorney General indicates that he will not interpose an objection to implementation of H. 3991.

16. The focus of the preclearance inquiry is retrogression. The question is whether there has been "retrogression in the position on racial minorities with respect to their effective exercise of the electoral franchise." Relevant evidence would include whether minority voters were included in the redistricting process, how the representatives of minority voters reacted to the plan, and how minority voters can exercise their vote in their districts.

17. The 2010 decennial population data from the United States Census Bureau reveals that South Carolina's population has increased to a total of 4,625,364 persons, which represents a 15.3% increase in total population in South Carolina over the 2000 South Carolina population of 4,012,012. The demographics and population changes are reflected in the following charts:

| **2000 Population** | **White** | **White % of total population** | **Black** | **Black % of total population** | **Hispanic / Latino** | **Hispanic / Latino % of total population** |
|---|---|---|---|---|---|---|
| 4,012,012 | 2,695,560 | 67.19% | 1,185,216 | 29.54% | 95,076 | 2.37% |

| **2010 Population** | **White** | **White % of total population** | **Black** | **Black % of total population** | **Hispanic / Latino** | **Hispanic / Latino % of total population** |
|---|---|---|---|---|---|---|
| 4,625,364 | 3,060,000 | 66.16% | 1,290,684 | 27.90% | 235,682 | 5.1% |

18. South Carolina is divided into 124 House districts. Based on the 2010 census, the ideal population for each district is 37,301. No district established by H. 3991 falls outside of +/- 2.5% of the ideal population.

19. The General Assembly adopted H. 3991 after soliciting and receiving input from South Carolina voters and debating the merits of various plans. Prior to the General Assembly's consideration of H. 3991, the House Election Laws Subcommittee held nine public hearings held in various cities across the State, including in Columbia, Beaufort, Florence, Rock Hill, Myrtle Beach, Aiken, Denmark, Greenville, and Summerville, South Carolina. At these hearings, the subcommittee took testimony from citizens and public officials regarding their redistricting concerns and preferences.

20. After soliciting and receiving public testimony, the House Election Laws Subcommittee adopted guidelines and criteria for congressional and legislative redistricting. The Subcommittee found that any redistricting plan must comply with the United States Constitution and the Voting Rights Act of 1965, and established specific criteria to which the plans must adhere.

21. After considering and debating the merits of various plans, the General Assembly enacted a plan that ultimately garnered bipartisan support in both houses of the General Assembly. On second reading in the House, which is the stage by rule at which substantive debate of the bill occurs, 69 Republicans voted in favor of H. 3991, and 23 Democrats supported the legislation, including ten members of the Legislative Black Caucus. The Senate passed H. 3991 by a vote of 37-5 on second reading, receiving broad bipartisan support with 12 Democrats voting in favor of the plan, including five members of the Legislative Black Caucus.

22. H. 3991 therefore is ripe for a determination that the plan has neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, and does not lead to a retrogression in the position of racial minorities in contravention of the guarantees set forth in 42 U.S.C. § 1973b(f)(2).

23. It is important that the Court act upon Plaintiff's claims at the earliest practicable date. All of the seats in the South Carolina House must be filled by election every two years, and the next election will occur on November 6, 2012. The candidate filing period for the 2012 election will open on March 16, 2012, and close on March 30, 2012. The state primary elections will be held on June 12, 2012, and any run-off primary elections will be held on June 26, 2012.

24. In order to preserve the existing election calendar, it is necessary that this Court consider and decide this controversy prior to the opening of the candidate filing period.

**Count I**

25. Each and every allegation contained in paragraphs one through twenty-three is reaffirmed and realleged as if fully incorporated herein.

26. The last judicially approved redistricting plan in South Carolina (2003) had twenty-nine majority-minority districts ("Benchmark Plan"). Because of demographic changes, as of 2011, the Benchmark Plan had a total of twenty-one majority-minority districts. When compared to the Benchmark Plan (as of 2011), H. 3991 increases the number of majority-minority districts in South Carolina from twenty-one to thirty. Even if compared to the Benchmark Plan as of 2003, there is still an increase in the number of majority-minority districts.

(a) H. 3991, when compared to the Benchmark Plan, does not lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral

franchise and, pursuant to Section 5, will not have the effect of denying or abridging the right to vote on the account of race or color. Additionally, H. 3991 was not adopted with retrogressive or discriminatory intent.

27. In addition to complying with the United States Constitution, the South Carolina Constitution, and the Voting Rights Act of 1965, H. 3991 adheres to legitimate state redistricting policies including contiguity, compactness, maintaining communities of interests, and protecting incumbency.

28. Plaintiff is entitled to a judgment that the House plan has neither the purpose nor effect of discriminating on the basis of race or color under Section 5, and that H. 3991 may be implemented without delay.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Convene a three-judge district court pursuant to 28 U.S.C. § 2284(a) to hear the matters raised in Plaintiff's Complaint;

(b) Issue such orders and convene such conferences as may be necessary on an expedited basis to ensure that what little discovery may be necessary in this action be taken and completed as expeditiously as possible;

(c) Enter a declaratory judgment that the South Carolina House of Representatives reapportionment plan (H. 3991) satisfies Section 5 of the Voting Rights Act because it has neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, and that H. 3991 may be enforced by Plaintiff; and

(d) Grant Plaintiff such other and further relief as may be appropriate, including the costs of this action.

*Signature page follows.*

Respectfully submitted,

**BAKER HOSTETLER**

E. Mark Braden
D.C. Bar No.: 419915
mbraden@bakerlaw.com
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
(202) 861-1504

OF COUNSEL:

**SOWELL GRAY STEPP & LAFFITTE, L.L.C.**

Robert E. Stepp
Fed. I.D. No.: 4302
rstepp@sowellgray.com
Robert E. Tyson, Jr.
Fed. I.D. No.: 7815
rtyson@sowellgray.com
1310 Gadsden Street
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400

**WILLOUGHBY & HOEFER, P.A.**

Benjamin P. Mustian
Fed. I.D. No.: 9615
bmustian@willoughbyhoefer.com
Tracey Green
Fed. I.D. No.: 6644
tgreen@willoughbyhoefer.com
930 Richland Street
Columbia, South Carolina 29202
(803) 252-3300

***Attorneys for Plaintiff***